# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

AMANDA HEAD,

    Plaintiff,                                          Case No.

v.                                                       Hon.

OXFORD RECOVERY CENTER,

    Defendant.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Ste 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out of this transaction or occurrence alleged in the complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff Amanda Head ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, hereby alleges as follows:

# INTRODUCTION

1. This is an action for money damages, liquidated damages, costs, attorneys' fees, and other relief against Defendant Oxford Recovery Center ("Defendant"), precipitated by the termination of Plaintiff's employment in contravention of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and Michigan Public Policy ("MPP"). But for Plaintiff's request for protected medical leave and her commitment to moral integrity, Defendant would not have taken adverse action against her (*i.e.*, termination). Furthermore, Defendant implements policies and practices that prevented Plaintiff from being compensated overtime hours and holiday pay despite working approximately 50 hours per week, including retroactively manipulating employee timesheets in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*.

# JURISDICTION AND PARTIES

2. Plaintiff Amanda Head is an individual residing in Fenton, Michigan, which is located in Genesee County.

3. Defendant Oxford Recovery Center is a domestic limited liability company headquartered in Brighton, Michigan, which is located in Livingston County.

4. Plaintiff's claims arise out of Defendant's multiple violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and Michigan Public Policy ("MPP").

5. This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claim.

6. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the events giving rise to Plaintiff's claims took place and where Defendant regularly conducts business.

7. The facts and unlawful employment practices within the meaning of the FMLA, FLSA, and MPP giving rise to this Complaint occurred within the Eastern District of Michigan.

8. At all times material to this proceeding, Defendant was an employer and Plaintiff was its employee within the meaning of the FMLA, FLSA and MPP.

## GENERAL ALLEGATIONS

9. Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

10. Defendant is a limited liability company, offering medical and psychological rehabilitation services.

11. Plaintiff began working for Defendant on October 31, 2022 in the position of Revenue Cycle Manager.

12. Plaintiff was trained by Kimberly "Casey" Coden-Diskin, who was involved in several criminal proceedings related to her functions at Defendant, including sixteen counts of unauthorized practice of a health profession and two counts of identity theft.

13. Only a week after beginning her new position, Plaintiff became privy to the unsavory business practices partaken in by Defendant.

14. Plaintiff soon realized that she had been docked pay for required meetings with her son who was receiving treatment for Autism from Defendant.

15. Additionally, Plaintiff witnessed Ms. Coden-Diskin using manipulative language with parents and insurance companies, even impersonating Plaintiff on occasion.

16. On or about December 2022, Plaintiff was instructed by Chief Executive Officer Tami Peterson and Ms. Coden-Diskin to notify the parents of children being treated that they would be required to prepay the coming year's insurance deductible.

17. Plaintiff expressed her concerns regarding this practice, but she was ultimately reprimanded by Ms. Peterson and Ms. Coden-Diskin, stating that Defendant "needed to make payroll".

18. In January 2023, Plaintiff was tasked with helping families by facilitating the onboarding of children.

19. This included contacting children's healthcare providers on behalf of parents to obtain waitlist letters.

20. On two occasions, Ms. Peterson and Ms. Coden-Diskin appallingly demanded that Plaintiff impersonate a child's parent during a call to the University of Michigan Health System in order to obtain these letters.

21. Ms. Peterson scolded Plaintiff after she voiced concerns and aggressively stated "just get a waitlist letter done…now".

22. On or about January 10, 2023, Ms. Peterson directed Plaintiff to terminate one of her employees, Megan Roemer, who was on protected FMLA leave after having a baby.

23. Ms. Roemer was expected to return to work on January 26, 2023, and had taken shortened leave due to personal financial hardships.

24. When Plaintiff responded to this direction by suggesting the illegality of terminating an employee on protected leave, Ms. Peterson suggested that she would simply transfer her to a lesser role.

25. Plaintiff again advised Ms. Peterson against these unlawful actions who responded by telling Plaintiff to "stay in [her] lane."

26. Ms. Peterson further stated "it's Michigan, I can terminate whoever I want."

27. Plaintiff felt so strongly against Ms. Peterson taking these actions, she consulted Human Resources Coordinator Jamie Johnson, who agreed with Plaintiff and convinced Ms. Peterson not to terminate or transfer Ms. Roemer.

28. However, upon Ms. Roemer's return to work, she was denied a raise that was given to all employees.

29. Plaintiff advocated for Ms. Roemer to receive the raise she deserved and needed, but she was repeatedly reprimanded by Ms. Peterson.

30. On March 9, 2023, Plaintiff was called into Ms. Peterson's office where she directed Plaintiff to download the mobile application, Signal, which is used for encrypted messaging and calling.

31. Ms. Peterson stated that Plaintiff was to only use this application to communicate with Ms. Coden-Diskin, whose legal proceedings placed Defendant on a "witness protection list."

32. Ms. Peterson encouraged Plaintiff to use this application since "it was not able to be traced."

33. Plaintiff had no intentions of contacting Ms. Coden-Diskin since she did not want to violate court rulings, but Ms. Peterson demanded that Plaintiff "just do her job."

34. In late March 2023, Plaintiff went on scheduled vacation using PTO time.

35. While on vacation, on April 3, 2023, Plaintiff received a phone call from Ms. Coden-Diskin.

36. Ms. Coden-Diskin was crying and in an evident frantic state when she asked Plaintiff for "a huge favor."

37. Ms. Coden-Diskin then asked Plaintiff to call her husband while impersonating her doctor, and state that Ms. Coden-Diskin was taking her prescribed medication.

38. Plaintiff refused to be involved in such an audacious and unlawful request and told Ms. Coden-Diskin that she could not help her.

39. Plaintiff returned from vacation on April 4, 2023, and met with Ms. Peterson who stated she was pulling Plaintiff's position as it was "no longer needed."

40. Ms. Peterson informed Plaintiff that she would be moving her to another team where she would act as an assistant to the Clinical Director.

41. This was a clear retaliatory reaction to Plaintiff's refusal to assist Ms. Coden-Diskin, who had a close relationship with Ms. Peterson.

42. After enduring constant stress due to the actions of Ms. Peterson and Ms. Coden-Diskin, Plaintiff visited her physician, who suggested Short Term Disability leave.

43. When Plaintiff informed Ms. Peterson of her need to take leave, Ms. Peterson responded by allowing Plaintiff to take a necessary leave of absence, but informed her that she would not have a position when she returned.

44. Plaintiff was instructed to gather all of her belongings and begin her leave.

45. On July 27, 2023, Plaintiff received a notice of termination, indicating that all benefits would end on July 31, 2023.

46. In terminating Plaintiff while she was on protected medical leave under the FMLA, Defendant interfered with Plaintiff's rights under the FMLA and retaliated against her for invoking her rights under the Act.

47. For the entirety of her employment, Plaintiff was classified as overtime-exempt, but was wrongfully denied compensation for overtime hours worked.

48. Defendant forfeited Plaintiff's exempt status by repeatedly docking pay and denying Plaintiff holiday pay.

49. Plaintiff estimates working in excess of fifty (50) hours per week.

## COUNT I
## FMLA INTERFERENCE & RETALIATION

50. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

51. Plaintiff dutifully and professionally performed her duties for Defendant. It was not until her employment with Defendant resulted in her acquiring a disability and notifying Defendant of her need to take a protected FMLA absence that her employment was terminated.

52. Defendant terminated Plaintiff's employment due to the exercise of her rights under the FMLA.

53. A causal connection exists between the exercise of Plaintiff's protected right and her termination. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Here, Defendant terminated Plaintiff the very next business day after she requested formal FMLA paperwork.

54. By terminating Plaintiff's employment prior to her protected return to work date, Defendant failed to comply with 29 U.S.C. § 2614(a)(1)(A)-(B) which states that an employee returning from medical leave has the right to "be restored by

the employer to the position of employment held by the employee when the leave commenced" or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

55. Defendant's actions in violation of the FMLA were willful.

56. As a direct and proximate result of Defendant's interference and retaliation against Plaintiff for exercising her FMLA rights, Plaintiff suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will continue to suffer in the future.

57. As a further direct and proximate result of Defendant's violation of the FMLA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work in the future.

## COUNT II
## VIOLATION OF MICHIGAN PUBLIC POLICY

58. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

59. Plaintiff was retaliated against in contravention of public policy.

60. Defendant failed to heed Plaintiff's advice regarding performance models that she believed were generating unlawful practices.

61. Plaintiff reported concerns of unlawful activity to her direct manager, then to Defendant as a whole.

62. Defendant retaliated against Plaintiff because of her protected activity by terminating her from her employment.

63. As a direct and proximate result of Defendant's violation of Michigan Public Policy, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith, and will so suffer in the future.

## COUNT III
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

64. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

65. The FLSA, 29 U.S.C. § 207, requires employers to pay employees one and one-half (1.5) times the regular rate of pay for all hours worked over 40 hours per week.

66. While Plaintiff was classified as overtime-exempt, Defendant forfeited this exemption by docking Plaintiff's pay and denying holiday pay.

67. Plaintiff consistently worked more than 40 hours per week without overtime pay.

68. Plaintiff worked outside of regularly scheduled shifts.

69. Plaintiff routinely worked approximately 50 hours per week without overtime pay.

70. Plaintiff's role as Revenue Cycle Manager was treated as overtime-exempt by Defendant.

71. Defendant is aware, or should have been aware, that Plaintiff performed work that required payment of overtime compensation.

72. In violation of the FLSA, Defendant failed to pay Plaintiff compensation or unpaid wages, compensable time, overtime, vacation time, and holiday pay.

73. Defendant's actions, policies, and practices described above violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiff for overtime compensation.

74. Defendant knew, or showed reckless disregard for the fact, that it failed to pay Plaintiff overtime compensation in violation of the FLSA.

75. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer a loss of income and other damages.

76. Plaintiff is entitled to liquidated damages and attorneys' fees and costs incurred in connection with this claim.

77. By failing to accurately record, report, and/or preserve records of hours worked by Plaintiff, Defendant has failed to make, keep, and preserve records with

respect to each of its employee sufficient to determine their wages, hours, and other conditions and practice of employment in violation of the FLSA, 29 U.S.C. § 201, *et seq*.

78. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 2559(a). Defendant knew, or showed reckless disregard for the fact, that its compensation practices were in violation of these laws.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff claims as follows:

a. Judgement against Defendant in the amount of Plaintiff's unpaid back pay, front pay, injunctive relief, declaratory judgment, liquidated damages, punitive damages, and attorney fees under the FMLA, FLSA, and MPP;

b. An award of unpaid overtime wages, wages for compensable hours, unaccrued vacation time, liquidated damages, costs and attorney fees under the FLSA;

c. Interest; and

d. Such other relief as in law or equity may pertain.

    Respectfully Submitted,
    HURWITZ LAW PLLC

    */s/ Noah S. Hurwitz*
    Noah S. Hurwitz (P74063)

*Attorneys for Plaintiff*
340 Beakes St. Ste. 125
Ann Arbor, MI 48104
(844) 487-9489

Dated: July 15, 2024

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

AMANDA HEAD,

    Plaintiff,

v.

OXFORD RECOVERY CENTER,

    Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. Ste 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

---

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff Amanda Head, by and through her attorneys, HURWITZ LAW PLLC, and hereby demands a jury trial in the above-captioned matter for all issues so triable.

                          Respectfully Submitted,
                          HURWITZ LAW PLLC

                          */s/ Noah S. Hurwitz*
                          Noah S. Hurwitz (P74063)
                          *Attorneys for Plaintiff*
                          340 Beakes St. Ste. 125
                          Ann Arbor, MI 48104

Dated: July 15, 2024                    (844) 487-9489