# Ex. 1

# HURWITZ LAW
## EMPLOYMENT LAW ATTORNEYS

August 11, 2023

**Sent Via Email (jamie@theoxfordcenter.com)**

Jamie Johnson
Human Resources Director
Oxford Recovery Center
7030 Whitmore Lake Road
Brighton, MI 48116

      **RE:**  **Amanda Head Employment**
            *Confidential pursuant to MRE 408 and FRE 408*

Dear Ms. Johnson:

      I represent former Revenue Cycle Manager Amanda Head regarding her employment with the Oxford Recovery Center (the "Company"). Ms. Head was demoted and ultimately terminated under dubious circumstances. *First*, I understand that Ms. Head refused to engage in acts at the behest of her manager that ran afoul of the law, so her termination violates Michigan Public Policy. *Second*, Ms. Head was retaliated against based on her refusal to terminate another employee while they were on protected medical leave under the Family and Medical Leave Act ("FMLA"). In addition, Ms. Head has brought to my attention that the Company unlawfully deducted from her salary for various reasons, including brief temporary absences from work. In doing so, the Company forfeits any overtime exemption for Ms. Head and thereby violates the Fair Labor Standards Act ("FLSA") by not paying my client one and a half times her regular rate of pay for her many overtime hours. In the interest of avoiding the costs and delay associated with litigation, my client will release the Company from liability in consideration for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This is a pittance in comparison to the amount the Company will accrue between damages, costs, and attorneys' fees once the matter heads to litigation. This offer will remain open for acceptance until **September 1, 2023**, after which time Ms. Head will proceed with filing legal proceedings in federal court.

      **I.**  **Ms. Head was unlawfully terminated by the Company.**

      From her very first week of working for the Company, Ms. Head was exposed to the Company's unethical practices. Ms. Head was informed that she would be trained by Kimberley Casey Coden-Diskin. Ms. Coden-Diskin is a convicted felon currently awaiting trial for numerous additional felonies connected with her employment with the Company. Ms. Coden-Diskin, together with the Company's Chief Executive Officer Tami Peterson, attempted to pressure Ms. Head into seeking unlawful payments from the Company's patients. When Ms. Head objected and questioned the ethical and legal nature of this practice, she was reprimanded and disciplined by the Company. In January 2023, Ms. Coden-Diskin and Ms. Peterson instructed Ms. Head to

  

340 Beakes St. Ste. 125, Ann Arbor, MI 48104     1.844.HURWITZ     www.HurwitzLaw.com     Info@HurwitzLaw.com

# HURWITZ LAW

## EMPLOYMENT LAW ATTORNEYS

impersonate a patient's parent on a telephone call to the University of Michigan. Again Ms. Head objected and was reprimanded. Furthermore, the Company has engaged in a practice of unlawfully docking its employees' salaries. As part of her managerial duties, Ms. Head was instructed by Ms. Peterson to deduct her employees' recorded working hours to no more than 80 hours biweekly. Ms. Peterson directly instructed Ms. Head to force her employees to leave early or deduct any time over 80 hours from their wages, as well as to deduct any time her employees' left the building from their salary, even when performing work outside the building. When Ms. Head objected to this practice, she was again reprimanded.

In January 2023, another of the Company's employees had taken protected medical leave under the FMLA following the birth of their child and was due to return to work on or about January 26, 2023. On January 10, 2023, Ms. Peterson instructed Ms. Head to unlawfully terminate this employee while she was still on FMLA leave. When Ms. Head objected and told Ms. Peterson that doing so would be illegal, Ms. Peterson replied that they would simply transfer the employee to a lesser position. Again Ms. Head's moral integrity forced her to object, correctly stating that this too would be illegal. Ms. Peterson replied that Ms. Head should "stay in [her] lane." Immediately, Ms. Head reported Ms. Peterson's conduct to you. After meeting with you, Ms. Peterson reluctantly allowed the employee to return to work. However, she nevertheless denied that employee a raise, in retaliation for her taking FMLA leave, while every other employee received a raise. Ms. Head advocated for the employee to receive a raise and was again reprimanded by Ms. Peterson. Ms. Peterson was no doubt aware of the requirements of the FMLA, as the right to reinstatement guaranteed by that Act is explicitly outlined in the Company's employee handbook.

By March 2023, the criminal proceedings against Ms. Coden-Diskin had progressed and she had received formal charges for numerous felonies in connection with her employment with the Company. On March 9, 2023, Ms. Peterson summoned Ms. Head into her office. Ms. Peterson instructed Ms. Head to download "Signal", an encrypted messaged service that promises privacy and security. Ms. Peterson stated that the explicit purpose of downloading Signal was to continue communicating with Ms. Coden-Diskin despite a court-ordered prohibition on contacting her during the trial. Ms. Peterson further stated that no one could be seen communicating with Ms. Coden-Diskin and that the encrypted messaging service would ensure that they could continue contacting Ms. Coden-Diskin without being discovered.

Later that month, Ms. Head took leave from work and was scheduled to return on April 4, 2023. On April 3, 2023, she received a call from Ms. Coden-Diskin, who attempted to pressure her into impersonating her physician to convince her husband that she was taking prescribed medication. Ms. Head refused and stated that doing so would be illegal. The following day, Ms. Peterson informed Ms. Head that her position was "no longer needed" and that she would be placed in a lesser, non-managerial role, effectively demoting her. This demotion was evidently carried out in retaliation for Ms. Head's insistence on her moral integrity throughout her employment. After all that she had been through, Ms. Head had developed extreme anxiety leading her to seek

340 Beakes St. Ste. 125
Ann Arbor, MI 48104 1.844.HURWITZ www.HurwitzLaw.com Info@HurwitzLaw.com

advice from her physician who instructed her to take leave from her work. When Ms. Head communicated this to Ms. Peterson, she was told that she would not have a position after her leave and terminated her on the spot. She would receive a formal termination letter on July 27, 2023.

## II.   The Company violated Public Policy by terminating Ms. Head.

"Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Landin v. Shealthsource Saginaw, Inc.*, 305 Mich. App. 519, 526 (2014). Michigan courts recognize the following public policy exceptions to the general rule of at-will employment: "exercising a right guaranteed by law, exercising a duty required by law, and refraining from violating the law." *Id*. Examples of the latter include "refusal to falsify pollution reports, refusal to give false testimony before a legislative committee, and refusal to participate in a price-fixing scheme." *Id.; see also Silberstein v. Pro-Golf of America*, 278 Mich. App. 446 (2008) (holding the plaintiff was discharged in violation of public policy when she refused to "cook the books"). The Supreme Court of Michigan recently held that the public-policy exception to at-will employment does extend to discharges in retaliation for internal reporting of alleged violations of the law. *Stegall v Resource Technology Corporation*, 2016-155043-CD, 2022 WL 2784727 (Mich. July 15, 2022). An employee need not show that an alleged discharge in violation of public policy was the exclusive reason for her termination. *Id.* In effect, it is unlawful for an employer to terminate an employee because they refused to participate in unlawful activity.

It is clear the Company implemented a policy of engaging in unethical and unlawful conduct on an astonishing scale. Furthermore, the Company has repeatedly attempted to corrupt Ms. Head's integrity by pressuring her to participate in much of this illegal conduct. In particular, by pressuring Ms. Head to unlawfully charge patients, to fraudulently impersonate the parents of patients, to unlawfully terminate her own staff in contravention of the FMLA, to covertly communicate with a convicted felon against court orders, and to fraudulently impersonate a medical practitioner, the Company has attempted to entangle Ms. Head in its web of criminality. Ms. Head rightfully objected to each of these requests, refusing to engage in the criminal conduct. Indeed, she even attempted to report Ms. Peterson's criminal acts to Human Resources, but this led to discipline and eventually termination.

## III.   The Company violated the FMLA by terminating Ms. Head.

In disciplining, demoting, and terminating Ms. Head, the Company has violated the FMLA's prohibition on retaliation against employees who "oppos[e] any practice made unlawful by the act." 29 U.S.C. § 2615(a)(2). Plaintiffs have offered ample evidence and briefing to establish a genuine issue of material fact as to whether they had a good-faith belief that Defendant had a policy or practice of violating the FMLA. See *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312–13 (6th Cir. 1989) ("A person opposing an apparently discriminatory practice does not bear the entire risk that it is in fact lawful; he or she must only have a good faith belief

  

# HURWITZ LAW
## EMPLOYMENT LAW ATTORNEYS

that the practice is unlawful."). Ms. Head was asked by the Company's Chief Executive Officer to terminate, and later to demote, an employee on protected FMLA leave. Later, Ms. Peterson evidently punished that employee for taking FMLA leave. Such a practice would be illegal under FMLA. 29 C.F.R. § 825.220 ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions[.]"); *Fields v. Fairfield Cty. Bd. of Developmental Disabilities*, 507 F. App'x 549, 555 (6th Cir. 2012). Ms. Head unquestionably, openly opposed the Company's unlawful practices and suffered adverse action because of it.

The employer must be on notice of the employee's complaints, and the complaints must be specific to FMLA. See *Deloatch v. Harris Teeter, Inc*., 797 F. Supp. 2d 48, 68 (D.D.C. 2011) (collecting cases); see also *Gruppo v. FedEx Freight Sys., Inc*., 296 F. App'x 660, 663–64 (10th Cir. 2008) (affirming a grant of judgment as a matter of law to the defendant-employer in a FMLA-retaliation claim where "there was no evidence that [plaintiff] informed defendants that he thought what they were proposing to do to [an employee returning from FMLA leave] was illegal because it was contrary to the FMLA, or even more generally, because it interfered with the employee's right to take specific amounts of unpaid medical leave without suffering adverse employment consequences."). The Supreme Court "would call it 'opposition' if an employee took a stand against an employer's discriminatory practices not by 'instigating' action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons*." Crawford v. Metro. Gov't of Nashville & Davidson Cty*., Tenn., 555 U.S. 271, 277 (2009). In a concurring opinion, Justice Alito stated his view that "whether the opposition clause shields employees who do not communicate their views to their employers through purposive conduct" was still an open question. *Id*.at 283 (Alito, J., concurring). However, "Justice Alito did not suggest that employees must verbally express their views[.]" *Collazo v. Bristol-Myers Squibb Mfg., Inc*., 617 F.3d 39, 47 (1st Cir. 2010) (citing Crawford, 555 U.S. at 283 (Alito, J., concurring)).

**IV.     The Company improperly deducted salary from "exempt" employees.**

Ms. Head began her employment with the Company on November 2, 2022. Since then, the Company has consistently and improperly deducted her salary for impermissible reasons. Specifically, Ms. Head is regularly required to take her son to medical appointments and attend parent meetings with her son's medical providers. The Company impermissibly deducts these absences from Ms. Head's salary. Furthermore, the Company consistently denies Ms. Head her right to holiday pay. In the 2022-2023 holiday season both Christmas and New Year's Day fell on a Sunday, however the Company failed to either compensate Ms. Head for these holidays or give her the option of taking the following Mondays off work. Were that not enough, the Company institutes a policy of giving its employees each Easter off work, which of course falls on a Sunday every year, and the Company has again failed to either compensate its employees or allow them to take the following Monday off work.

340 Beakes St. Ste. 125
Ann Arbor, MI 48104

 1.844.HURWITZ

 www.HurwitzLaw.com

 Info@HurwitzLaw.com

# HURWITZ LAW

## EMPLOYMENT LAW ATTORNEYS

In accordance with 29 U.S.C. § 206 of the FLSA an employee is entitled to be paid at least the minimum wage for any period in which she performs work for the Company. Under normal circumstances, Ms. Head would be exempted from this requirement by 29 U.S.C. § 213(a)(1), which, in conjunction with 29 C.F.R. 541.300, provides that certain professional employees are exempt from the minimum wage provision. However, 29 C.F.R. 541.603 states that improper deductions from an exempt employee will cause the employer to lose the exemption. Such a practice must be shown on the facts of the matter, see *e.g., Orton v. Johnny's Lunch Franchise, LLC,* 668 F.3d 843 (2012). Effectively, an employer is "stripped of the exemption because its actual practice of improperly deducting pay vitiates the intent to pay a salary" *Viviani v. Coffey & Associates, Inc.,* 2023 WL 3444696 (W.D. Oklahoma). In other words, by making consistent improper salary deductions an employer loses the benefit of an employee's exempt status and will be required by law to conform with the minimum wage provision in 29 U.S.C. § 206.

By consistently docking Ms. Head's salary for partial absences and by failing to pay her for paid holidays the Company violated 29 C.F.R. 541.603. As a result, Ms. Head loses exempt status ordinarily afforded by 29 U.S.C. § 213(a)(1) and will be owed salary for all hours worked in accordance with 29 U.S.C. § 206. Pursuant to 29 U.S.C. § 216, the Company is liable not only for Ms. Head's unpaid salary, but for liquidated (*i.e.,* double) damages and her attorney's fees.

Included in Ms. Head's overtime calculation will be all the hours she worked for the Company. Ms. Head has never been a "nine to five" employee. She faces pressure to work outside of those hours, typically working up to 10 hours of overtime per week. The extent of those unpaid wages will be fully investigated if the matter is not resolved.

V.      **Personnel File and Litigation Hold.**

This letter further requests that you email me a copy of Ms. Head's personnel file pursuant to the Bullard-Plawecki Employee Right to Know Act, which shall include any sort of arbitration agreement, arbitration language, or contractually shortened statute of limitations, if such a thing exists. The Company's failure to produce the requested documents shall constitute a waiver and estop the Company from attempting to enforce any alleged contractual rights. In addition, the Company should immediately take all necessary steps to preserve all documents, tangible things, and electronically stored information ("ESI") that relates to Ms. Head's employment and suspend any and all routine document destruction and any and all automatic delete functions for any ESI on systems and data storage locations likely to contain documents, data, or information related to her employment.

Regards,

*Noah S. Hurwitz*

**Noah S. Hurwitz**
*Principal Attorney*

 340 Beakes St. Ste. 125
Ann Arbor, MI 48104

 1.844.HURWITZ

 www.HurwitzLaw.com

 Info@HurwitzLaw.com

# HURWITZ LAW

## EMPLOYMENT LAW ATTORNEYS

**Noah@HurwitzLaw.com**
**Office: (844)-HURWITZ**
**Cell: (734) 645-5263**



