**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

AMANDA HEAD,

     Plaintiff,                     Case No. 24-cv-11818-MAG-APP

v.                                   Hon. Mark A. Goldsmith

OXFORD RECOVERY CENTER,

     Defendant.

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF'S COMPLAINT

Defendant Oxford Recovery Center, through their attorneys, Varnum LLP, move for summary judgment of Plaintiff Amanda Head's Complaint under Fed. R. Civ. P. 56. This Motion is supported by an accompanying Brief, which is incorporated herein by reference.

Pursuant to Local Rule 7.1, the parties met and conferred during mediation on December 8th and were unable to come to an agreement regarding Plaintiff's claims.

WHEREFORE, Defendant respectfully requests this Court enter an Order granting this Motion for Summary Judgment; dismissing Plaintiff's claims prejudice; and granting such other further relief as may be just and equitable.

Dated: January 21, 2026     By:   */s/*    *Salvatore J. Vitale*
                                          J. David Garcia (P60194)
                                          Salvatore J. Vitale (P75449)
                                          Jailah D. Emerson (P84550)
                                          VARNUM LLP
                                          *Attorney for Defendant*
                                          480 Pierce Street, Suite 300
                                          Birmingham, MI 48009
                                          (248) 567-7800
                                          jdgarcia@varnumlaw.com
                                          jdemerson@varnumlaw.com
                                          sjvitale@varnumlaw.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

AMANDA HEAD,

      Plaintiff,                         Case No. 24-cv-11818-MAG-APP

v.                                      Hon. Mark A. Goldsmith

OXFORD RECOVERY CENTER,

      Defendant.

_____

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO FOR SUMMARY JUDGMENT OF PLAINTIFF'S COMPLAINT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................i

II.    INTRODUCTION .................................................................................1

III.   STATEMENT OF FACTS ..................................................................1

IV.   STANDARD OF REVIEW .................................................................2

V.    ARGUMENT........................................................................................3

    A.    Plaintiff Does Not Qualify for FMLA Protection .................................3

        1.    *Legal Standard for FMLA Eligibility*........................................3

            (a)    Plaintiff Fails to Meet The Twelve-Month Employment Requirement.................................5

            (b)    Plaintiff Fails to Meet The Hours Of Service Requirement........................................................5

    B.    MICHIGAN PUBLIC POLICY CLAIM ........................................................5

        1.    *Legal Standard for Violation of Public Policy Claim* ...............5

        2.    *Michigan Law Recognizes Shortened Limitations Periods in Employment Contracts*.........................................6

        3.    *Plaintiff's Claims Are Barred By the Contractual Limitations Period Contained in Her Employment Agreement.* ...............................................7

    C.    FLSA ...........................................**ERROR! BOOKMARK NOT DEFINED.**

        1.    *Plaintiff's Primary Duty Was the Performance of Non-Manual Work Related to the General Business Operations of the Employer.* .........................................8

        2.    *Discretion*..............................................................................11

        3.    *Plaintiff's Complaint Fails to Identify Any Alleged Violations of the FLSA with Specificity.* .................................12

VI.    CONCLUSION.............................................................................................13

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

1. Whether Plaintiff's FMLA interference/retaliation claim fails because she was not an "eligible employee" at the time leave commenced, as she had been employed for substantially less than twelve months and had not worked at least 1,250 hours in the twelve months preceding the alleged leave.

   Defendant Answers: Yes

   Plaintiff Answers: No

2. Whether Plaintiff's Michigan public-policy wrongful discharge claim is barred by the Employment Agreement's six-month contractual limitations period.

   Defendant Answers: Yes

   Plaintiff Answers: No

3. Whether Plaintiff's FLSA claim should be dismissed because (a) her role falls within the administrative exemption and (b) her pleading lacks the requisite specificity regarding overtime hours and unpaid wages.

   Defendant Answers: Yes

   Plaintiff Answers: No

## <u>CONCISE STATEMENT OF THE MOST CONTROLLING OR APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT</u>

Plaintiff's FMLA claim fails as a matter of law because FMLA eligibility requires, *inter alia*, at least twelve months of employment and 1,250 hours worked in the twelve months before leave begins; eligibility is determined as of the date leave commences. 29 C.F.R. § 825.110; *O'Connor v. Busch's Inc.*, 492 F. Supp. 2d 736 (E.D. Mich. 2007); *Rollins v. Wilson Cnty. Gov't*, 967 F. Supp. 990 (M.D. Tenn. 1997); *Cross v. Dental Assisting Acad. of Louisville, LLC*, 417 F. Supp. 3d 836 (W.D. Ky. 2019).

Plaintiff's public-policy claim is time-barred under the Employment Agreement's 180-day limitations clause, which is enforceable under Michigan law and in the Sixth Circuit. *Rory v. Continental Ins. Co.*, 473 Mich. 457, 703 N.W.2d 23 (2005); Thurman v. DaimlerChrysler, Inc., 397 F.3d 352 (6th Cir. 2004); *Myers v. W.-S. Life Ins. Co.*, 849 F.2d 259 (6th Cir. 1988); *White v. Detroit Med. Ctr.*, 2016 WL 4443174 (E.D. Mich. Aug. 19, 2016).

Plaintiff's FLSA claim is subject to dismissal because her alleged duties fall within the administrative exemption, and her complaint fails to allege overtime violations with the requisite factual specificity. 29 U.S.C. 21; 29 C.F.R. §§ 541.0, 541.201, 541.202; *Hall v. Plastipak Packaging*, *Inc*., 2015 WL 5655888, at *3 (E.D. Mich. Sept. 25, 2015); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I.    <u>INTRODUCTION</u>

This litigation represents a calculated attempt by Plaintiff Amanda Head ("Plaintiff") to avoid $154,800.00 in legitimate medical charges incurred for her minor child's autism treatment by her former employer, Oxford Recovery Center ("Oxford"). Only after her demands for debt forgiveness were rejected did Head launch this retaliatory action.

## II.    <u>STATEMENT OF FACTS</u>

At all times relevant to the allegations in Head's Complaint, Oxford was a therapeutic treatment center in Brighton, Michigan that offered a comprehensive array of treatments for autism-related issues. On October 31, 2022, Head accepted full-time employment as Oxford's Revenue Cycle Manager on October 24, 2022, with a start date of October 31, 2022, at an annualized salary of $70,000. She executed standard onboarding documents—including an Employment Agreement containing at-will language and a 180–day contractual limitations period for state-law claims. (See **Ex. A, Employment Agreement and Offer Letter**). Oxford's 2020 Employee Handbook, which Head received and signed, reflects policies on at-will employment, timekeeping, overtime authorization, confidentiality, and FMLA rights for eligible employees. (**Ex. B, Employee Handbook**).

1

On April 19, 2023—less than six months after onboarding—Plaintiff's primary care physician recommended she pursue short-term disability (STD). (See **Ex. D, Doctor Letter**). Oxford cooperated. HR completed the employer portions of the STD claim, identified her position and pay, and processed her leave. (**Ex. E, STD Documentation**). STD benefits commenced shortly after April 26, 2023 and continued through July 2023 with weekly payments (net amounts typically $725.91), consistent with continuous disability status. Plaintiff voluntarily chose not to return after her STD leave, communicating this decision to the office and removing all her personal belongings before her last scheduled day. (**Ex. F, Declaration of T. Peterson**). Plaintiff alleges her employment ended on July 27, 2023. (ECF No. 1, PageID 8).

In July 2024, Plaintiff filed suit asserting (1) FMLA interference/retaliation, (2) wrongful discharge in violation of Michigan public policy, and (3) FLSA violations related to overtime and alleged docking/holiday pay practices. The timing of Head's lawsuit is not coincidental – it follows Oxford's legitimate attempts to collect $154,800.00 in outstanding medical charges for services rendered to Head's son pursuant to binding Financial Policy Agreements.

## III.   <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## IV.   ARGUMENT

### A.   Plaintiff Does Not Qualify for FMLA Protection

#### 1.   Legal Standard for FMLA Eligibility

The Family and Medical Leave Act establishes three independent eligibility requirements that an employee must satisfy to qualify for leave protections under the statute. An employee must demonstrate that: (1) they have been employed by the employer for at least twelve months; (2) they have worked at least 1,250 hours during the twelve months immediately preceding the commencement of the leave; and (3) they work at a worksite where the employer employs at least fifty employees within a seventy-five-mile radius. *O'Connor v. Busch's Inc.*, 492 F.Supp.2d 736 (E.D. Mich. 2007). Each of these criteria must be satisfied independently, and a plaintiff's failure to meet any single requirement disqualifies the employee from FMLA protections. *Rollins v. Wilson County Government*, 967 F. Supp. 990 (M.D. Tenn. 1997).

The hours-of-service requirement is determined according to principles established under the Fair Labor Standards Act, and the employer bears the burden

of demonstrating that the employee has not worked the requisite hours only if accurate records were not maintained. 29 C.F.R. § 825.110.

Eligibility for FMLA leave is determined as of the date the leave is to commence. If an employee is on non-FMLA leave at the time they meet the twelve-month employment requirement, any portion of the leave taken for an FMLA-qualifying reason after meeting the eligibility requirement would be considered FMLA leave. 29 C.F.R. § 825.110. Courts have consistently upheld this leave-commencement date test, emphasizing that it provides clarity and avoids speculation about employee eligibility. *Cross v. Dental Assisting Academy of Louisville, LLC*, 417 F.Supp.3d 836 (W.D. Ky. 2019).

Eligible employees may take up to twelve weeks of unpaid leave for qualifying reasons, including a serious health condition that makes the employee unable to perform their job, or to care for a spouse, child, or parent with a serious health condition. *Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860 (6th Cir. 2023); 29 U.S.C. § 2612.

To invoke FMLA protections, an employee must provide notice of their need for leave and a qualifying reason for the leave. The notice does not need to explicitly reference the FMLA but must provide sufficient information to allow the employer to determine whether the leave qualifies under the Act. 29 C.F.R. § 825.301. If the

employee fails to provide adequate notice or explain the reasons for the leave, the employer may deny the request. 29 C.F.R. § 825.301.

### 2. Analysis of Plaintiff's FMLA Eligibility

### B. PLAINTIFF'S MICHIGAN PUBLIC POLICY CLAIM IS BARRED BY THE EMPLOYMENT AGREEMENT.

#### 1. Legal Standard for Violation of Public Policy Claim

Plaintiff next asserts a claim for retaliatory termination against public policy under Michigan state law. Although Michigan recognizes the doctrine of at-will employment, "an employer is not free to discharge an employee at will when the reason for the discharge contravenes public policy." *McNeil v. Charlevoix Cnty.,* 484 Mich. 69, 79, 772 N.W.2d 18 (2009) (quoting *Suchodolski v. Mich. Consol. Gas Co.,* 412 Mich. 692, 695, 316 N.W.2d 710 (1982)). As such, the Michigan Supreme Court established three public policy exceptions under which an employer's discharge would violate public policy; namely, (1) the employee is discharged in violation of an explicit legislative statement which prohibits the termination of a worker who acts in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right that is conferred by a well-established legislative enactment. *Suchodolski v. Mich. Consol. Gas Co.,* 412 Mich. 692, 695, 316 N.W.2d 710 (1982). Therefore, "[a] claim for termination of employment in violation of public policy must be based on an 'objective legal source'" establishing

public policy." *Kimmelman v. Heather Downs Mgmt. Ltd*., 278 Mich.App. 569, 573, 753 N.W.2d 265 (2008).

### 2. <u>Michigan Law Recognizes Shortened Limitations Periods in Employment Contracts</u>

It is well established that shortened limitations periods are valid and enforceable in employment contracts, "provided that the shortened period itself shall be a reasonable period." *White v. Detroit Medical Center*, 2016 WL 4443174 (ED Mich, August 19, 2016) (quoting *Ord. of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947)). The Sixth Circuit has held that six-month limitations periods on employment-related claims are not inherently unreasonable. See, e.g., *Thurman v. DaimlerChrysler, Inc*., 397 F.3d 352, 357 (6th Cir. 2004); *Myers v. Western-Southern Life Ins*. Co., 849 F.2d 259, 262 (6th Cir. 1988). Moreover, the Michigan Supreme Court has rejected a "reasonableness" standard with respect to limitations period terms in employment contracts. See *Rory v Continental Ins Co*, 473 Mich 457; 703 NW2d 23 (2005) ("[U]ambiguous contracts ... are to be enforced as written unless a contractual provision violates law or public policy."). Therefore, a six-month contractual limitations period contained in an employment contract is reasonable and enforceable under both Michigan law and the law of this Circuit.

     **3.**    <u>**Plaintiff's Claims Are Barred By the Contractual Limitations Period Contained in Her Employment Agreement.**</u>

The Employment Agreement includes a 180-day contractual limitations provision for "any action or lawsuit arising out of employment… or any other claims against Employer (except for claims arising under federal civil rights statutes)." **Ex. B**, **Employment Agreement and Offer Letter**. Plaintiff alleges her termination, the alleged event giving rise to her public policy claim in Count II of her Complaint, was effective July 27, 2023. See, ECF No. 1, PageID 8.  Plaintiff's Complaint was filed July 15, 2024—well beyond the 180-day limitations period provided by the Employment Agreement. *Id*. As such, Plaintiff's state law public policy claim is time barred by the express six-month contractual limitations period in Plaintiff's Employment Agreement and should be dismissed.

     **C.**    <u>**Plaintiff Was Exempt from the overtime Requirements of the FLSA and Fails to Plead any Alleged Violations of the FLSA with Specificity.**</u>

"Section 13(a)(1) of the Fair Labor Standards Act, as amended, provides an exemption from the Act's minimum wage and overtime requirements for any employee employed in a bona fide executive, administrative, or professional capacity." 29 C.F.R. § 541.0; 29 U.S.C. 21. "The term 'employee employed in a bona fide administrative capacity' … mean[s] any employee:

(1) Compensated on a salary or fee basis … at a rate of not less than $684 per week;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

### 1.   **Plaintiff Was Compensated on a Salary Basis.**

"An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 CFR 541.602(a) (Nov. 14, 2022). "Deductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability." 29 CFR 541.602(b)(1) (Nov. 14, 2022).

Plaintiff was hired into a salaried, exempt managerial role at $70,000, with job duties in revenue cycle management. Rather than facts about duties, supervision, or discretion, Plaintiff relies upon allegations of "docking" and "holiday pay" to avoid her exemption. The FLSA does not mandate holiday or PTO pay for exempt employees. The FLSA's salary-basis rules turn on whether there were actual, impermissible deductions from guaranteed salary. Plaintiff pleads no specific deductions.

### 2.      Plaintiff's Primary Duty Was the Performance of Non-Manual Work Related to the General Business Operations of the Employer.

"To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers." 29 CFR 541.201(a) (Nov. 14, 2022) "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Id*. In other words, the work of an administrative employee is considered "ancillary to an employer's principal production activity." *Renfro v. Ind. Mich. Power Co*., 370 F.3d 512, 517 (6th Cir. 2004). "Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as … finance; accounting; budgeting; auditing; insurance; quality control; … internet and database administration; legal and regulatory compliance; and similar activities." 29 CFR 541.201(b) (Nov. 14, 2022).

In her Complaint, Plaintiff alleges that, as part of her work, she was "tasked with helping families by facilitating the onboarding of children" which included "contacting the children's healthcare providers on behalf of parents to obtain waitlist

letters." (ECF No. 1, Page ID 5). Ms. Peterson, Defendant's CEO, testified at her deposition that Plaintiff "was an exempt employee" tasked with working "with the lead biller on getting accounts that were not getting paid, paid, through -- it's primarily through health insurance accounts." (**Ex. G, T. Peterson Dep. Trans. at p. 10).**

Furthermore, Plaintiff extensive description of her job duties as Oxford's Revenue Cycle Manager in her Linkedin profile leaves no doubt that she performed work related to Defendant's general business operations:

> **Completed all billing in a timely manner while meeting all federal filing guidelines mandated by insurance companies**; Coordinated billing and collection activities; Follow-up on all claims and rejections in a timely fashion; **Ran and Oversaw the billing team to ensure efficiency**; **Completed account audits**; Communicated with the leadership team on status of billing including problems, delays and/or concerns; **Provided assistance and understanding of EOB and communicated information to providers and patients**; Ran Weekly A/R to include printing statements; **Communicated financial information with accounting**; **Performed collections by contacting patients**; Submission of claims while reconciling and correcting disputed claims; **Ensured HIPAA regulations are being followed**; Identified any account errors and works with team to correct any issues; Run, analyze, and relay monthly, quarterly, and yearly financial reports to leadership; **Prepare for Medicare Audits**; Performs other functions as assigned by management [**Ex. H, Amanda Head Linkedin Profile (available at** ].

### 3.    Plaintiff Exercised Discretion in Performing Her Duties.

"To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance." 29 CFR 541.202(a) (Nov. 14, 2022). "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id*.

> "Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to, …whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; …whether the employee has authority to commit the employer in matters that have significant financial impact; …whether the employee provides consultation or expert advice to management…." [29 CFR 541.202(c) (Nov. 14, 2022)].

Importantly, "[E]mployees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." 29 CFR 541.202(c) (Nov. 14, 2022).

As noted above, Plaintiff's duties included overseeing Defendant's billing team, ensuring regulatory compliance, conducting account audits, and preparing regular financial reports for management. ([**Ex. H**, Amanda Head Linkedin Profile]). Courts have consistently held that similar positions fall within the administrative

exemption to FLSA's overtime requirements. See, e.g., *Stark v ABC Pediatric Clinic*, 2023 WL 5961657 (SD Tex, August 25, 2023), report and recommendation adopted, 2023 WL 5963778 (SD Tex, September 13, 2023) ("Stark testified her tasks included … billing, making sure that things were done correctly between the medical assistants and the billing department, posting insurance payments, posting accounts receivable, reviewing insurance explanation of benefits, investigating whether insurance claims were properly submitted, and following up with insurance companies on denied or underpaid claims."); *Johnson v Donna C Haley, MD, PC*, No. 1:12-CV-1450-TWT, 2013 WL 2445164 (ND Ga, June 5, 2013); *Marcus v Lominy*, No. 18 CIV. 1857 (NSR), 2022 WL 493688 (SDNY, February 17, 2022).

### 4.   Plaintiff's Complaint Fails to Identify Any Alleged Violations of the FLSA with Specificity.

"Where the plaintiff alleges violations of the FLSA's...overtime wage provisions, the complaint should, at least approximately, allege the hours worked for which these wages were not received." *Gifford v. Meda*, No. 09-13486, 2010 WL 1875096, at *22 (E.D. Mich. 2010) (Borman, J.). A complaint of FLSA violations must do more than parrot the text of a statute or the elements of a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that "a formulaic recitation of the elements of a cause of action will not do"); *Dejesus v. HF Mgmt. Servs.*, LLC, 726 F.3d 85, 89 (2d Cir. 2013) (requiring plaintiffs to "do more than repeat the language of the statute" in their pleadings). Therefore, it can be fatal when a complaint alleges

only that "Defendants paid Plaintiffs just their regular hourly rate of pay for hours worked over 40 in a week ... and failed to pay Plaintiffs one and one half times their regular rates of pay for all hours worked over 40 in a week." *Hall v. Plastipak*, 2015 WL 5655888, at *3 (E.D. Mich. Sept. 25, 2015) (Granting motion to dismiss an FLSA claim for lack of specificity); See also, *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012) (Allegation that the plaintiffs "regularly worked hours over 40 in a week and were not compensated for such time" was "one of those borderline phrases" that, "while not stating [an] ultimate legal conclusion[, was] nevertheless so threadbare or speculative that [it] fail[ed] to cross the line between the conclusory and the factual.").

Here, Plaintiff only alleges that she estimates working in excess of fifty hours per week. (ECF No. 1, PageID 8). Plaintiff does not provide any factual basis for why she should not be considered an exempt employee under the statute beyond her conclusory allegations that her pay was docked and she was denied holiday pay. These conclusory allegations are insufficient to support a claim under the FLSA.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests the Court grant its Motion for Summary Disposition and dismiss Plaintiff's claims with prejudice.


Respectfully submitted,

Dated: January 21, 2026      By:   */s/*    *Salvatore J. Vitale*
                                          J. David Garcia (P60194)
                                          Salvatore J. Vitale (P75449)
                                          Jailah D. Emerson (P84550)
                                          VARNUM LLP
                                          *Attorney for Defendant*
                                          480 Pierce Street, Suite 300
                                          Birmingham, MI 48009
                                          (248) 567-7800
                                          jdgarcia@varnumlaw.com
                                          jdemerson@varnumlaw.com
                                          sjvitale@varnumlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2026, I electronically filed the foregoing

paper with the Clerk of the Court using the ECF system which will send notification

of such filing to all counsel of record, including counsel for Plaintiff.

Respectfully submitted,

By:    /s/Salvatore J. Vitale
         Salvatore J. Vitale
         VARNUM LLP

15