UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA HEAD,

Plaintiff,

v. Case No. 24-cv-11818
HON. MARK A. GOLDSMITH

OXFORD RECOVERY CENTER,

Defendant.
_________________________________/

**OPINION AND ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT ON FLSA CLAIM IN COUNT III (Dkts. 35, 36)**

The only remaining claim in this case is Plaintiff Amanda Head's claim that her former employer, Defendant Oxford Recovery Center (Oxford), failed to pay her overtime as required by the Fair Labor Standards Act (FLSA). See Compl. (Dkt. 1).[1] Before the Court are the parties' cross-motions for summary judgment as to Head's FLSA claims in Count III, with Oxford seeking summary judgment in its favor (Dkt. 36) and Head seeking summary judgment in her favor as to liability only. Dkt. 35. For the following reasons, the Court denies both motions.[2]

## I. BACKGROUND

Head began working for Oxford on October 31, 2022, as a revenue cycle manager at an annual salary of $70,000. Head Aff. ¶¶ 3–4 (Dkt. 35-2). Head's offer letter classifies her position as exempt and specifies that she was expected to work a five-day, 40-to-45 hour week. Offer

[1] Counts I and II were voluntarily dismissed. Stip. and Order of Dismissal (Dkt. 42).

[2] The Court will decide the motions based on parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the pending motions, briefing includes: (i) Head's Response (Dkt. 37), (ii) Defendant's Response (Dkt. 39), and (iii) Head's Reply (Dkt. 40).

Letter at PageID.630 (Dkt. 36-1). Head states that throughout her employment, she routinely worked approximately 50 hours each week without being paid overtime pay. Head Aff. ¶¶ 5–7. Oxford's time records corroborate that Head worked more than 40 hours during several weeks, though the logs also show her highest recorded workweek was 41.61 hours. Time Records at PageID.650–652 (Dkt. 36-3). After working for Oxford for about five months, Head went on short-term disability leave in April 2023, and her employment ended in July 2023. Head Aff. ¶¶ 15–19; Peterson Decl. ¶¶ 2–3 (Dkt. 36-6).

## II. ANALYSIS [3]

Head alleges that Oxford violated the FLSA's overtime provisions when it classified her position as exempt and failed to compensate her for routinely working overtime, including outside her regularly scheduled shifts. Compl. ¶¶ 65–73.

In her opening motion for partial summary judgment on Count III, Head frames her argument around the executive exemption, contending that (i) her primary duty was not management, (ii) she did not direct the work of two or more employees, and (iii) she lacked hiring or firing authority. Pl. Mot. at PageID.533–544. Head's motion, however, takes aim at the wrong exemption. Oxford, in response, clarifies that it relies on the administrative rather than executive exemption. Def. Resp. at PageID.748.

[3] The Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The filing of cross-motions for summary judgment does not alter that standard. Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). Each movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can only survive summary judgment by producing evidence showing a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

In its motion, Oxford argues that it is entitled to summary judgment on Count III because, as revenue cycle manager, Head (i) received an annual salary, (ii) performed non-manual work directly related to Oxford's general business operations, and (iii) exercised discretion and independent judgment in performing her duties. Def. Mot. at PageID. 622–627.

Oxford also separately argues that Head's FLSA claim fails because her complaint does not identify her alleged overtime with specificity. Id. at PageID.627–628. Oxford cites to authorities that address the sufficiency of allegations at the pleading stage. See Hall v. Plastipak, No. 15-11428, 2015 WL 5655888, at *3 (E.D. Mich. Sept. 25, 2015) (assessing whether an FLSA complaint plausibly stated a claim); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (requiring a complaint to plead sufficient facts to state a plausible claim for relief). But at summary judgment, the Court considers the evidentiary record, not the specificity of the complaint. Fed. R. Civ. P. 56(c)(1). Because Oxford attacks the pleading rather than the Rule 56 record, this argument supplies no basis for summary judgment.

In her reply, Head addresses the administrative exemption. Head argues for partial summary judgment on Count III because she (i) worked under the supervision and direction of lead biller Jordan Miller, (ii) wielded no hiring, firing, disciplinary, or personnel authority, (iii) supervised no employees and had no direct reports, (iv) held the lowest managerial rank, (v) performed routine billing and collection procedures rather than exercising independent judgment, and (vi) was classified as exempt under an HR process the CEO admittedly did not understand. Pl. Reply at PageID.784–788.

Ordinarily, a movant may not raise a new ground for summary judgment in its reply. Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008). But even assuming Head's reply

may raise a new argument, she is still not entitled to summary judgment. As explained below, genuine disputes of material fact preclude a finding in her favor.

The FLSA exempts employees from its overtime requirements who are employed in a bona fide administrative capacity. To qualify for the administrative exemption, three elements must be met. 29 C.F.R. § 541.200(a). The employee must (i) be compensated on a salary or fee basis at a rate of not less than $684 per week; (ii) have as their primary duty the performance of office or nonmanual work directly related to the management or general business operations of the employer or its customers; and (iii) exercise that duty with discretion and independent judgment as to matters of significance. Id. "[P]rimary duty" means the principal or most important function performed by the employee, determined from the whole character of the employee's job. 29 C.F.R. § 541.700(a). In assessing primary duty, relevant factors include the relative importance of the exempt duties, the amount of time devoted to them, the employee's freedom from direct supervision, and the relationship between the employee's salary and the wages of employees performing similar nonexempt work. Id. As a general matter, FLSA exemptions receive a "fair," rather than narrow, interpretation. Encino Motorcars, LLC v. Navarro, 584 U.S. 79, 89 (2018).

Applying that framework, the Court finds genuine disputes of material fact regarding the administrative exemption. The record supports Oxford's argument that Head was engaged in work directly related to the general business operations of the employer; Head does not materially address this element nor offer facts to the contrary. However, enough conflicting evidence exists as to the salary and discretion elements for a reasonable factfinder to favor either party. The Court therefore must not resolve the dispute on summary judgment.

**1. Salary-Basis Requirements**

An employee is paid on a salary basis only if they regularly receive a predetermined amount not subject to reduction because of variations in the quality or quantity of the work performed. 29 C.F.R. § 541.602(a). An improper deduction does not remove exempt status unless the facts demonstrate an "actual practice" of such deductions showing that the employer did not intend to pay employees a salaried wage. 29 C.F.R. § 541.603(a). Isolated or inadvertent deductions do not extinguish the exemption if the employer reimburses the employee. 29 C.F.R. § 541.603(c). Additionally, an exemption may survive where the employer maintains a clearly communicated policy that prohibits improper deductions and includes a complaint mechanism, reimburses employees for improper deductions, and makes a good-faith commitment to future compliance. 29 C.F.R. § 541.603(d).

Though the parties do not dispute that Head's $70,000 salary met the required rate, they disagree as to whether Oxford made improper deductions that could defeat Head's exempt status. Offer Letter at PageID.630; Def. Resp. at PageID.744. Head asserts that her pay was "repeatedly docked" when she had to leave early to attend her son's medical appointments. Head Aff. ¶ 8. Oxford, by contrast, swears that Head's pay was never docked for caregiver meetings and that deductions only occurred for her unpaid PTO. Peterson Dep. 15:18–16:3; Peterson Decl. ¶ 14. Timekeeping logs show Head took periods of unpaid leave. Time Records at PageID.651–653 (Dkt. 36-3). Yet the record still does not settle the threshold question of whether there was an actual reduction in Head's predetermined salary inconsistent with Head's exempt status. This dispute alone defeats summary judgment.

**2. Nonmanual Work Directly Related to Business Operations**

Work is "directly related" to management or general business operations when it involves assisting with the running or servicing of the business, rather than producing its goods or services. 29 C.F.R. § 541.201(a). Nonmanual work that fits this definition includes but is not limited to finance, accounting, budgeting, insurance, and similar activities. 29 C.F.R. § 541.201(b); Foster v. Nationwide Mut. Ins. Co., 710 F.3d 640, 644–646. (6th Cir. 2013). The Sixth Circuit has described such work as "ancillary to an employer's principal production activity." Renfro v. Ind. Mich. Power Co., 370 F.3d 512, 517 (6th Cir. 2004).

The material facts about the nature of Head's work are undisputed. Both parties describe her primary duty as working with the lead biller on accounts receivable and seeking payment on unpaid health-insurance accounts. Pl. Resp. at PageID.703–704; Def. Mot. at PageID.625. These activities closely resemble the finance, accounting, and insurance functions identified in Section 541.201(b). Consistent with that framework, Head's revenue-cycle work was also ancillary to Oxford's core service, which was to provide healthcare and therapeutic treatment. Accordingly, Head's work was directly related to Oxford's business operations. Therefore, this element is satisfied.

**3. Discretion and Independent Judgment as to Matters of Significance**

Determining whether an employee exercises discretion and independent judgment in performing their primary duty generally requires comparing and evaluating the employee's possible courses of conduct and actions or decisions after considering the alternatives. 29 C.F.R. § 541.202(a). The administrative employee must make independent choices, free from immediate direction or supervision even if decisions or recommendations are reviewed at a higher level. 29 C.F.R. § 541.202(c). Such discretion requires more than an employee's skill in applying accepted

techniques, procedures, or standards and does not encompass merely "mechanical, repetitive, recurrent, or routine work." 29 C.F.R. § 541.202(e). "Matters of significance" refer to the level of importance or consequence of the work performed. 29 C.F.R. § 541.202(a).

Measuring against that standard, the parties give materially different accounts of Head's responsibilities. Head's own LinkedIn profile states that as revenue cycle manager, she coordinated billing and collections, followed up on claims and rejections, and oversaw the billing team—duties that connote the exercise of significant discretion. Head's LinkedIn Profile at PageID.691–692 (Dkt. 36-8). But Defendant's CEO, Tami Peterson, paints a much narrower picture: she testified Head received guidance from the lead biller on what accounts she needed to pursue. Peterson Dep. 10:17–24. Peterson also avers that Head had no authority to make personnel decisions without management's input. Id. at 31:13–18. As it stands, the record leaves unresolved whether Head compared alternative courses of action and made consequential choices in executing her duties, such as pursuing payment for unpaid accounts. Choosing between parties' competing inferences about Head's degree of discretion would require weighing the evidence. That task is left to a jury at trial, not the Court on summary judgment.

## III. CONCLUSION

For the reasons stated above, the Court denies both motions for summary judgment. (Dkts. 35, 36).

**SO ORDERED.**

Dated: September 28, 2026
Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 28, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager